UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

**UNITED STATES OF AMERICA,**

    Plaintiff,

  v.                                    Case No. 2:22-cr-117(5)
                                          JUDGE EDMUND A. SARGUS, JR.

**TAVARYYUAN JOHNSON,**

    Defendant.

## OPINION AND ORDER

In October 2022, the Government charged Defendant Tavaryyuan Johnson by a Superseding Indictment with drug distribution, drug trafficking conspiracy, and firearms offenses. (ECF No. 148.) It named 22 co-defendants in the same Superseding Indictment and charged them with similar crimes. (*Id.*) Since the Superseding Indictment, many of Mr. Johnson's co-defendants have signed plea agreements. In April 2024, the Government charged Mr. Johnson by a Second Superseding Indictment with additional but similar crimes as in the Superseding Indictment. (ECF No. 778.)

This matter is before the Court on Mr. Johnson's Motion to Suppress Evidence from Search Warrants. (Mot., ECF No. 706.) The Government opposes his Motion. (Resp., ECF No. 736.) For the reasons below, Mr. Johnson's Motion is **DENIED**.

**I.    BACKGROUND**

Mr. Johnson asks the Court to suppress all evidence obtained by law enforcement pursuant to the execution of two separate search warrants at 430A South Warren Avenue, Columbus, Ohio 43204 and 1214 Smith Road, Columbus, Ohio 43207. (Mot. PageID 2688.) He argues that there was not probable cause to issue either warrant, and that the affidavits in support of the warrants

did not particularize a nexus between the evidence sought and the places to be searched. (*Id.* PageID 2693.)

The first affidavit was sworn to by Special Agent Trace S. Way of the United States Department of Homeland Security Investigations on June 28, 2022, before Magistrate Judge Chelsey M. Vascura in this Court. ("Warren Affidavit," ECF No. 706-1 PageID 2704.) The second affidavit was also sworn to by Special Agent Way on June 30, 2022, before Magistrate Judge Vascura in this Court. ("Smith Affidavit," ECF No. 706-2 PageID 2739.)

The Court summarizes each Affidavit and search in turn.

A. The Warren Affidavit and Search

The Warren Affidavit is 34 pages long (with attachments), contains 60 paragraphs, and is attached to a warrant for 430A South Warren Avenue, Columbus, Ohio 43204. (ECF No. 706-1.) In that Affidavit, Special Agent Way began by describing his experience and training; specifically, his participation in state and federal investigations involving illegal possession of firearms and narcotics, narcotics trafficking, human trafficking, and prostitution. (*Id.* PageID 2705–08.) Special Agent Way summarized his knowledge about how drug traffickers commonly function and execute their trafficking enterprise, including that they commonly store evidence of drug trafficking in their houses. (*Id.* PageID 2711–13.)

Next, Special Agent Way provided a long history of the investigation into the drug trafficking organization ("DTO") led by Patrick Saultz and Cordell Washington (co-defendants). (*Id.* PageID 2714–30.) The background discussion about the DTO included information that Mr. Johnson assisted Mr. Saultz and Mr. Washington with distributing cocaine, heroin, fentanyl, and marijuana throughout Columbus. (*Id.* PageID 2714.) The Warren Affidavit states that Mr. Johnson's residence was at 430A South Warren Columbus, Ohio 43204. (*Id.* PageID 2730.)

The Warren Affidavit summarizes information provided in a letter written by a confidential source, identified as "CS#6," and explains the steps taken by law enforcement to verify that information, which included interviewing CS#6 and reviewing cellular phone toll information to corroborate CS#6's statements about DTO members engaging in DTO activities in West Virginia. (*Id.* PageID 2724–25.) The Warren Affidavit notes that CS#6 identified Mr. Johnson as a member of the DTO. (*Id.*)

The Warren Affidavit also explains that Special Agent Way or those working with him on the DTO investigation obtained a federal court order on June 9, 2022, for the interception of wire and electronic communications for a telephone line used by Mr. Saultz. (*Id.* PageID 2729.) The intercepted communications confirmed that Mr. Washington and Mr. Saultz were the leaders of the DTO. (*Id.*) The intercepted communications also included a call from Mr. Johnson to Mr. Saultz in which Mr. Saultz tells Mr. Johnson to "stop touching it" in the context of drug testing. (*Id.* PageID 2729–30.) Based on Special Agent Way's experience investigating narcotics traffickers and familiarity with the background of this case, he believed Mr. Johnson "to be around and handling bulk illegal drugs on a day-to-day basis" and "Saultz telling Johnson to 'stop touching it,'" was a reference to whatever drug Mr. Johnson was handling. (*Id.* PageID 2730.)

Magistrate Judge Vascura authorized the search warrant on June 28, 2022 (*id.* PageID 2704) and the search was executed the next day (Resp. PageID 3099). The Government states that 53.586 grams of cocaine base, approximately $44,060 in United States currency, a firearm, drug paraphernalia, and multiple cell phones were recovered during the search. (*Id.* PageID 3099–3100.)

      B.      **The Smith Affidavit and Search**

The Smith Affidavit is 36 pages long (with attachments), contains 70 paragraphs, and is attached to a warrant for 1214 Smith Road, Columbus, Ohio 43207. (ECF No. 706-2.) The Smith

Affidavit and Warren Affidavit contain many of the same paragraphs; however, the Smith Affidavit notes that on July 29, 2022, law enforcement arrested Mr. Johnson pursuant to a federal criminal complaint and describes how the DTO consistently used the property at 1214 Smith Road for drug trafficking. (*Id.* PageID 2765, 2768.) The Smith Affidavit states that law enforcement observed Mr. Washington frequently come and go from 1214 Smith Road immediately prior to suspected drug transactions. (*Id.* PageID 2765.) The Smith Affidavit provides an example: on June 18, 2022, Mr. Washington and an unknown male spoke on the phone, then Mr. Washington drove to 1214 Smith Road and obtained a medium box, spoke with the unknown male again to arrange a meeting at another known DTO location, and then Mr. Washington and the unknown male met at the other known DTO location. (*Id.* Page ID 2765–67.) Based on the affiant's training, experience, and knowledge of the case background information, he believed that Mr. Washington and the unknown male engaged in a drug transaction. (*Id.*)

Magistrate Judge Vascura authorized the search warrant on June 30, 2022, and law enforcement executed the search the next day. (*Id.* PageID 2739; Resp. PageID 3099.) The Government states that 244.744 grams of cocaine, 266.978 grams of fentanyl, approximately $122,537 in United States currency, 34 firearms, and drug paraphernalia were recovered during the search. (Resp. PageID 3100.)

      C.    **The Smith Search Warrant Summary**

Mr. Johnson also included an informational summary of the 1214 Smith Road search with his Motion, attached as Exhibit C. (ECF No. 706-3.) Task Force Agent Harmon prepared the summary after the search was conducted. (*Id.* PageID 2776.) In the summary, Agent Harmon stated that 1214 Smith Road is owned by Priscilla Washington (co-defendant), grandmother to Mr. Johnson. The summary also includes a description of the interview law enforcement conducted of

4

Ms. Washington during the search, in which Ms. Washington informed law enforcement that Mr. Johnson had a key and access to her home. (*Id.*)

II.     **ANALYSIS**

Mr. Johnson argues that all evidence obtained as a result of the searches should be suppressed because the Affidavits failed to establish probable cause. (Mot. PageID 2688.) He also requests a hearing. (*Id.*) The Court will first address Mr. Johnson's request for a hearing.

    A.     **Mr. Johnson is not entitled to a hearing.**

An affidavit in support of a search warrant is presumed valid. *United States v. Fountain*, 643 F. App'x 543, 545 (6th Cir. 2016). A defendant is entitled to an evidentiary hearing on the veracity of a warrant affidavit *only if* he or she makes a substantial preliminary showing "that [a] false statement was included in the affidavit by the affiant knowingly and intentionally, or with reckless disregard for the truth, and the false statement was necessary to the finding of probable cause." *Franks v. Delaware*, 438 U.S. 154, 155 (1978); *United States v. Brown*, 732 F.3d 569, 575 (6th Cir. 2013) (citing *Franks*).

Mr. Johnson does not make any argument that a *Franks* hearing is necessary. As the Government correctly points out, Mr. Johnson "has not made a preliminary substantial showing of any falsity in Special Agent Way's affidavit[s]." (Resp. PageID 3122.) So, the Court **DENIES** Mr. Johnson's request for a *Franks* evidentiary hearing; it will decide Mr. Johnson's Motion to Suppress on the briefing.

    B.     **Mr. Johnson does not have a reasonable expectation of privacy in 1214 Smith Road and cannot contest the search.**

"It has long been the rule that a defendant can urge the suppression of evidence obtained in violation of the Fourth Amendment only if that defendant demonstrates that his Fourth Amendment rights were violated by the challenged search or seizure." *United States v. Padilla*,

5

508 U.S. 77, 81 (1993) (citations and emphasis omitted). A defendant's "Fourth Amendment rights are violated only when the challenged conduct invaded his legitimate expectation of privacy rather than that of a third party." *United States v. Payner*, 447 U.S. 727, 731 (1980) (citations and emphasis omitted). Suppression "can be successfully urged only by those whose rights were violated by the search itself, not by those who are aggrieved solely by the introduction of damaging evidence." *Alderman v. United States*, 394 U.S. 165, 171–72, (1969) ("Coconspirators and codefendants have been accorded no special standing.").

To challenge a search, the defendant "must demonstrate he had an expectation of privacy in the place searched and that his expectation was reasonable." *United States v. Jordan*, 417 F. Supp. 3d 950, 956 (N.D. Ohio 2019) (quotation and citations omitted). To meet this burden, the defendant must "show a legitimate expectation of privacy: 1) he must manifest an actual, subjective expectation of privacy; and 2) that expectation is one that society is prepared to recognize as legitimate." *Id.* (quotation and citation omitted).

In evaluating whether a legitimate expectation of privacy exists, courts may consider several factors, including:

> the person's proprietary or possessory interest in the place to be searched or item to be seized; whether the defendant has the right to exclude others from the place in question; whether he had taken normal precautions to maintain his privacy; whether he has exhibited a subjective expectation that the area would remain free from governmental intrusion; and whether he was legitimately on the premises.

*United States v. Sanders*, No. 1:18-CR-031, 2019 WL 3459352, at *5 (S.D. Ohio July 31, 2019) (Black, J.), *aff'd,* No. 21-3737, 2022 WL 2176294 (6th Cir. June 16, 2022) (citation omitted).

Mr. Johnson argues that he has standing to assert that his Fourth Amendment rights were violated during the searches at 430A South Warren Avenue and 1214 Smith Road. (Mot. PageID 2693–94.) The Government only argues that Mr. Johnson does not have standing to contest the search at 1214 Smith Road. (Resp. PageID 3110–11.) Since the Government concedes that Mr.

6

Johnson has standing to challenge the search at 430A South Warren Avenue, the Court will only address Mr. Johnson's standing arguments as to the search at 1214 Smith Road.

Mr. Johnson argues that he has standing under the Fourth Amendment because he has a reasonable expectation of privacy in the 1214 Smith Road residence. He roots his expectation of privacy on two grounds: first, his grandmother, a "close family member," is the owner and resident of 1214 Smith Road, and second, he has keys and access to her home. (Mot. PageID 2694–95.)

The Government counters that Mr. Johnson cannot claim "prejudice only through use of evidence gathered as a consequence of a search or seizure directed at someone else." (*Id.* PageID 3110, citing *Rakas v. Illinois*, 439 U.S. 128, 134 (1978).) The Government argues that Mr. Johnson cannot prove a "privacy interest at Smith Road when he was not living in the 1214 Smith Road residence at the time of the search." (*Id.* PageID 3111.) Finally, the Government contends that having a key to a residence does not amount to a sufficient privacy interest to confer standing to challenge the search. (*Id.*)

Mr. Johnson has not established his expectation of privacy in 1214 Smith Road. Although Mr. Johnson correctly points out that a person need not reside in a house to assert an expectation of privacy in that home, he provides few facts that demonstrate his expectation of privacy in his grandmother's house. While he asserts that he had a key to his grandmother's home, Mr. Johnson does not state whether he slept at his grandmother's house, kept his belongings there, or how often he visited. *See United States v. Bell*, No. 1:17-CR-336, 2018 WL 1173033, at *3 (N.D. Ohio Mar. 6, 2018) ("co-defendant did not have standing where he had never been an overnight guest, kept clothes there, or done anything on the premises 'other than pursue his drug-trafficking career'") (citing *United States v. Trammell*, 52 F. App'x. 661, 664 (6th Cir. 2002)); *Sanders*, 2019 WL 3459352, at *5 (finding that the defendant had an expectation of privacy despite not owning or

7

leasing the premises because he "was a frequent overnight guest, he had his own key to the apartment, he kept his clothes there, and he had permission to come and go at his leisure").

Mr. Johnson cites to *United States v. Williams* to support his contention that he has a reasonable expectation of privacy in 1214 Smith Road. (Mot. PageID 2694, citing No. 1:14-cr-118, 2015 WL 3884725, at *4–5 (S.D. Ohio June 24, 2015) (Barrett, J.). In *Williams*, the defendant had a legitimate expectation of privacy in a house he did not reside in because he was one of two individuals to have a key, he owned the house, and he permitted a family member to occasionally stay at the house. *Williams*, 2015 WL 3884725, at *5. *Williams* is distinguishable, however, because while Mr. Johnson had access to his grandmother's home, he does not contend he owned the home or controlled who stayed there.

Accordingly, Mr. Johnson has not demonstrated his expectation of privacy in 1214 Smith Road and does not have standing to contest the search at 1214 Smith Road. The Court need not address Mr. Johnson's probable cause arguments regarding 1214 Smith Road.

### C. The Warren Affidavit established probable cause for the search of 430A South Warren Road.

The Fourth Amendment provides that "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." U.S. Const. amend. IV. "At the very core" of the Fourth Amendment is the right to "be free from unreasonable governmental intrusions." *Kyllo v. United States*, 533 U.S. 27, 31 (2001).

Probable cause exists for a search when "the totality of the circumstances presented in a warrant affidavit would lead a person of reasonable caution to believe there is a fair probability that contraband or evidence of a crime will be found in a particular place." *United States v. Smith*,

8

No. 21-1457, 2022 WL 4115879, at *3 (6th Cir. Sept. 9, 2022), *cert. denied*, 143 S. Ct. 2499 (2023) (citing *Florida v. Harris*, 568 U.S. 237, 243–44 (2013) (quotations omitted); *Illinois v. Gates*, 462 U.S. 213, 238 (1983)). A probable cause "nexus between the place to be searched and the evidence sought" must be present. *United States v. Carpenter*, 360 F.3d 591, 594 (6th Cir. 2004) (en banc).

An inquiry into probable cause requires a "flexible, all-things-considered approach"—"turning on the assessment of probabilities in particular factual contexts—not readily, or even usefully, reduced to a neat set of legal rules." *Harris*, 568 U.S. at 244 (citation omitted). Probable cause is not a high bar. *United States v. Waide*, 60 F.4th 327, 335 (6th Cir. 2023) (citing *United States v. Sheckles*, 996 F.3d 330, 337 (6th Cir. 2021)). Courts must pay "great deference" to an issuing judge's determination, *McLane Co. v. E.E.O.C.*, 581 U.S. 72, 84 (2017), *as revised* (Apr. 3, 2017) (citation omitted), and overturn an issuing judge's decision only if he or she "arbitrarily exercised his or her authority," *United States v. Christian*, 925 F.3d 305, 311–12 (6th Cir. 2019) (en banc) (citation omitted). "This deferential approach ensures that an issuing court's discretion will only be reversed if it was arbitrarily exercised." *United States v. Crawford*, 943 F.3d 297, 305 (6th Cir. 2019) (citations and quotations omitted).

Finally, even if a court finds a Fourth Amendment violation occurred, the United States Supreme Court has "rejected the argument that exclusion is a necessary consequence of a Fourth Amendment violation." *Herring v. United States*, 555 U.S. 135, 141 (2009) (citing *United States v. Leon*, 468 U.S. 897, 905–06 (1984); *Arizona v. Evans*, 514 U.S. 1, 10, 13–14 (1995); *Pennsylvania Bd. of Prob. and Parole v. Scott*, 524 U.S. 357, 363 (1998)). For it to be warranted, the "benefits of deterrence must outweigh the costs." *Herring*, 555 U.S. at 140, (citing *Leon*, 468 U.S. at 910).

Turning to the Motion before the Court, Mr. Johnson makes two main arguments in support of suppressing all evidence found at 430A South Warren Avenue. (Mot. PageID 2693.) First, he argues that the Warren Affidavit failed to establish the reliability of a confidential informant. (*Id.*) Second, he contends that the Warren Affidavit does not demonstrate a nexus between the evidence sought and the place to be searched. (*Id.*) The Court analyzes each argument in turn.

      i.      **The Warren Affidavit established probable cause.**

Mr. Johnson argues that the Warren Affidavit lacked the requisite probable cause because it failed to specify the veracity and reliability of CS#6's letter. (Mot. PageID 2696–97.) In support, Mr. Johnson states that the affiant did not describe CS#6's reliability on past occasions and that CS#6's letter was the "only connection between the alleged drug trafficking organization and Mr. Johnson." (*Id.*) Further, Mr. Johnson contends that it is unknown whether the information CS#6 provided in the letter was stale or fresh, and therefore, the search warrant is invalid. (*Id.* PageID 2697–98.)

The Government counters that the Warren Affidavit established probable cause because it demonstrated the reliability of CS#6. (Resp. PageID 3111–14.) The Government acknowledges that the Warren Affidavit "does not indicate whether CS#6 had a previous track record with law enforcement that was known to Special Agent Way" but argues that "different circumstances require different means for verifying an informant's reliability." (*Id.* PageID 3113, citing *Crawford*, 943 F.3d at 306–7 (law enforcement must take steps to corroborate informant's veracity when an "officer relies upon information from an informant the officer is using for the first time, and whose credibility the officer cannot verify through other officers").) In support of its argument that CS#6 was reliable, the Government points to law enforcement's general and specific knowledge of Mr. Johnson's involvement with the DTO, corroboration of CS#6's information

10

(including through analysis of cellular phone toll information), CS#6 being a known informant, and CS#6 approaching the Government to provide information. (*Id.*)

The Government also contends that the Warren Affidavit contained "ample evidence that the defendant was involved in a drug trafficking organization," and the "ongoing nature of the defendant's various conspiracies and the type of evidence those schemes involved refute any claims of staleness." (Resp. PageID 3111–15, 118.)

The Warren Affidavit established probable cause. The Warren Affidavit demonstrated the reliability and veracity of CS#6. The Government correctly points out law enforcement's general and specific knowledge of Mr. Johnson's involvement with the DTO and the steps it took to corroborate CS#6's information. (*Id.* PageID 3111–13.) For example, CS#6 identified DTO members engaging in DTO activities in West Virginia on certain days, and law enforcement used cellular phone toll information to corroborate CS#6's statements. (ECF No. 706-1 PageID 2725; Resp. PageID 3113–14); *see Crawford*, 943 F.3d at 306–07 (when there is no track record of credibility, steps to test an informant's veracity can include law enforcement verifying key information).

In addition, the identity of CS#6 is known to law enforcement. (Resp. PageID 3115.) The use of a "confidential source" or "CS" rather than "unknown source" or "unidentified source" is pertinent—"confidential" implies a tipster whose identity is known to the police, but is kept secret. *Compare United States v. Elkins*, 300 F.3d 638, 651 (6th Cir. 2002) *with United States v. Christian*, 893 F.3d 846, 856 (6th Cir.2018), *reh'g en banc granted, opinion vacated,* 904 F.3d 421 (6th Cir. 2018), and *on reh'g en banc,* 925 F.3d 305 (6th Cir. 2019).

Contrary to Mr. Johnson's assertion that CS#6's letter was the "only connection between the alleged drug trafficking organization and Mr. Johnson," the Warren Affidavit included several

11

other points of connection. (Mot. PageID 2697.) Prior to CS#6's letter, law enforcement had knowledge of Mr. Johnson's involvement with the DTO. (Resp. PageID 3111, 15; ECF 706-1 PageID 2714.) Further, after CS#6's letter, law enforcement continued to obtain information concerning Mr. Johnson's involvement with the DTO, including Mr. Johnson's intercepted telephone conversation with Mr. Saultz, and based on that content, Special Agent Way believed that Mr. Johnson continued to handle bulk illegal drugs. (Resp. PageID 3112; ECF 706-1 PageID 2729–30.)

Finally, Mr. Johnson's staleness argument is not persuasive. The "question of staleness depends on the "inherent nature of the crime." *United States v. Spikes*, 158 F.3d 913, 923 (6th Cir. 1998). "Evidence of ongoing criminal activity will generally defeat a claim of staleness." *United States v. Greene*, 250 F.3d 471, 481 (6th Cir. 2001). Here, CS#6 provided information that described an ongoing criminal enterprise that had been engaging in narcotics distribution and sex trafficking for at least six months—the DTO—and that Mr. Johnson was a part of that enterprise. (ECF 706-1 PageID 2724–25); *see Spikes*, 158 F.3d at 923 (information in affidavit was not stale when affiant "described a continuing criminal enterprise involving the manufacture and trafficking of crack cocaine over a four-year period of time" prior to obtaining the warrant). Thus, the Warren Affidavit included sufficient information to establish the freshness of CS#6's information.

Accordingly, the Warren Affidavit established probable cause.

### ii. A probable cause nexus between Warren Avenue and the evidence sought existed.

Mr. Johnson next contends that the only connection between the evidence sought and the place to be searched was that 430A South Warren Avenue was Mr. Johnson's residence. (Mot. PageID 2699.) According to Mr. Johnson, there was not a sufficient nexus between the evidence sought and the place to be searched. (*Id.*)

The Government counters that the Warren Affidavit established Mr. Johnson as a drug dealer through evidence including "information from confidential sources, informants, [and] electronic and wire communications of Johnson and Washington," and that his residence was 430A South Warren Avenue. (Resp. PageID 3119.)

Mr. Johnson's no-nexus argument is unpersuasive. As the Government points out,

> an affidavit containing credible, verified allegations of drug trafficking, verification that said defendant lives at a particular residence, combined with the affiant officer's experience that drug dealers keep evidence of dealing at their residence, can be sufficient to demonstrate a nexus between the criminal activity and the suspect residence to validate the warrant—even when there is absolutely no indication of any wrongdoing occurring at that residence.

*United States v. Sumlin*, 956 F.3d 879, 886 (6th Cir. 2020) (citation omitted); (Resp. PageID 3119.)

Mr. Johnson relies on *United States v. McPhearson*, 469 F.3d 518 (6th Cir. 2006) to support his argument, but that case is not analogous. (Mot. PageID 2699–700). In *McPhearson*, law enforcement arrested the defendant on an assault charge at his home and found drugs on his person. *McPhearson*, 469 F.3d at 520. Officers then obtained a search warrant for drugs and drug trafficking items in the defendant's residence, asserting probable cause based only on the drugs found on the defendant when he was arrested outside of his home. *Id.* at 520–21. But the affidavit did not include any evidence that the defendant was involved in drug trafficking. *Id.* at 521. As a result, the court found that the affidavit did not establish probable cause. *Id.* at 525.

In contrast, the Warren Affidavit included sufficient evidence that Mr. Johnson was involved with the DTO, and that Mr. Johnson resided at his home at 430A South Warren Avenue. The affiant testified that based on his experience, drug dealers keep evidence of their dealing at their home. (Resp. PageID 3119); (ECF 706-1 PageID 2713, 2714, 2730); *see also United States v. Miggins*, 302 F.3d 384, 393–94 (6th Cir. 2002) (citing numerous cases in support of finding a

13

sufficient nexus for drug dealers' homes even if all drug activities were observed at other places than the dealers' homes).

In sum, the Magistrate Judge correctly identified a nexus between 430A South Warren Avenue and evidence sought in the warrant.

*****

Finally, the Government makes the additional argument that even if the Court finds that the Affidavits were not supported by probable cause, the Court should apply the good-faith exception to the exclusionary rule. (Resp. PageID 3120–21.) The Court need not address the exclusionary rule given its finding above that the 430A South Warren Affidavit was supported by probable cause.

### III.	CONCLUSION

For the reasons above, Mr. Johnson's request for a *Franks* evidentiary hearing and his Motion to Suppress Evidence from Search Warrants are **DENIED**. (ECF No. 706.)

**IT IS SO ORDERED.**

**8/1/2024**                                                      **s/Edmund A. Sargus, Jr.**
**DATE**                                                              **EDMUND A. SARGUS, JR.**
                                                                                        **UNITED STATES DISTRICT JUDGE**