UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

UNITED STATES OF AMERICA,

    Plaintiff,

v.                                      Case No. 2:22-cr-117(5)
                                        JUDGE EDMUND A. SARGUS, JR.

TAVARYYUAN JOHNSON,

    Defendant.

**OPINION AND ORDER**

This matter is before the Court on Defendant Tavaryyuan Johnson's Motion to Suppress. (Mot., ECF No. 847.) The Government opposes his Motion (Opp., ECF No. 862), and the Court held a hearing on Mr. Johnson's Motion on July 17, 2024 (ECF No. 873). For the reasons below, Mr. Johnson's Motion is **DENIED.**

    **I.    BACKGROUND**

This case involves a traffic stop and search of a vehicle that resulted in Mr. Johnson's arrest and indictment. Mr. Johnson challenges the validity of the search of his automobile that occurred after he was lawfully arrested and accordingly moves to suppress all evidence obtained during the warrantless search of his vehicle.

        **A.    Factual Background**

On September 4, 2020, Officer Kenneth Sanders with the Columbus Division of Police ("CDP") initiated a traffic stop after observing a Chevrolet Equinox traveling west on Sullivant Avenue with only one functioning headlight. (ECF No. 862-1, PageID 4489.) Before exiting his cruiser and approaching the driver, Officer Sanders conducted a search on LEADS and discovered that the registered owner of the vehicle, Mr. Johnson, had a suspended license. (*Id.*)

After confirming that Mr. Johnson was the driver of the vehicle, Officer Sanders issued Mr. Johnson citations for driving under a suspended license in violation of Columbus Codified Ordinance §§ 2141.14 and 2141.16, and for driving without a headlight in violation of Columbus Codified Ordinance § 2137.03A. (ECF No. 862-2, PageID 4492.) Officer Sanders then placed Mr. Johnson under arrest for driving under a suspended license. (*Id.*)

After handcuffing Mr. Johnson, Officer Sanders searched Mr. Johnson's person and discovered a "large amount of cash" in Mr. Johnson's front left pocket. (ECF No. 862-1, PageID 4489.) The money was bundled in several small bundles of small denominations. (*Id.*) When asked where Mr. Johnson got the money, he told Officer Sanders that he was a self-employed painter. (*Id.*) The total amount recovered from Mr. Johnson's person and from the subsequent search of his vehicle was $3,156.38.[1] (ECF No. 862-3, PageID 4494.) Mr. Johnson was then placed in the back of a police cruiser. (ECF No. 862-1, PageID 4489.)

Officer Sanders testified during the hearing that the standard Columbus Division of Police (CDP) procedure after arresting the driver of a vehicle is to impound the vehicle and conduct an inventory of the vehicle's contents. (*See* ECF No. 873.) The Government introduced into evidence the Columbus Division of Police Impound Policy. (*Id.*, Exhibit I.) That policy gives CDP officers three enforcement options when a vehicle may be impounded but is not reported as stolen and no aggravating circumstances are present. (*Id.*, Exhibit I, Section II(C).) Officers may (1) release the vehicle to the owner or to another person with the consent of the owner; (2) park the vehicle in a legal location, secure it, and keep the keys with the operator's property if arrested; or (3) impound the vehicle. (*Id.*) Officer Sanders testified that in his

---

[1] CPD's Evidence & Property Disposition Notice lists $3,156.38 but does not distinguish the money found on Mr. Johnson's person from the money found in the vehicle. (ECF No. 862-3, PageID 4494.)

2

experience, he often elects to impound the vehicle if the operator of a vehicle has other driving related infractions. (ECF No. 873.) Since Mr. Johnson had other driving related infractions, Officer Randall decided to impound his vehicle. (*Id.*)

After Officer Sanders decided to impound the vehicle, Officers Robert Franklin and Jared Randall arrived on the scene to conduct what the Officers describe as an "administrative inventory" of Mr. Johnson's vehicle. (ECF No. 862-1, PageID 4489.) Again, Officer Sanders testified that it was standard CDP procedure to "[c]onduct an inventory of the contents of all reasonably accessible areas and containers in the vehicle, and complete an Impound Vehicle Inventory." (ECF No. 873, Exhibit I, Section III(A).) The inventory aims to protect the owner's valuables and prevent accusations of theft when a vehicle is impounded. (*Id.*)

During the inventory, Officer Franklin searched the front passenger area. (ECF No. 862-1, PageID 4489.) He testified that he began by searching the front floor area, the passenger door, and glove compartment. (*Id.*; *see also* ECF No. 873.) Then he observed a small panel that appeared loose on the lower portion of the passenger side of the center console. (*Id.*) Officer Franklin testified that the panel was "covered in grime and dirt with the exception of the panel's edge," which appeared "clean" and "as if it had been accessed frequently." (*Id.*; *see also* ECF No. 862-1, PageID 4489.) Officer Franklin also testified that the access panel appeared to be sitting ajar and was not flush with the rest of the interior paneling. (ECF No. 873.) When Officer Franklin made contact with the panel, it fell freely to the floor. (*Id.*) Officer Franklin's body camera footage, however, does not show precisely how he touched the access panel or how readily it detached. (ECF No. 873, Def. Exhibit C., Officer Franklin Body Camera Footage, 7:50–8:03.) After removing the panel, Officer Franklin pointed his flashlight behind the access

3

panel and reached his hand inside the compartment to find what was later determined to be a baggie of black tar heroin. (*Id.*; *see also* ECF No. 862-3, PageID 4494.)

After recovering the suspected heroin, Officer Franklin made the following comments: "Oh, would you look at that! Hot dog! That's black tar heroin? Yeah! . . . Finally, one of the good hiding places. Every time I find a good place, there's nothing in it . . . I'm so fricking hyped right now!" (Franklin Body Cam., 7:58–8:05; 8:25–8:35; 9:05–9:15.) Officer Franklin testified that he was very excited when he found the narcotics because he was new to the police force and rarely discovered narcotics during inventory searches. (ECF No. 873.)

After locating narcotics in the access panel, Officers Franklin and Randall then began to inspect the vehicle for more narcotics. Officer Franklin observed that the baggies were filled deeper into the center console, near the front gear shifter. (ECF No. 873; *see also* ECF No. 862-1, PageID 4490.) Officer Franklin testified that the panel around the radio, gear shift, and temperature controls ("instrument panel") was also loose, and when he removed the panel, he located several more bags of suspected narcotics. (*Id.*) Officers later determined the total amount of narcotics seized to be 233.916 grams of heroin and 344.198 grams of crack cocaine. (*Id.*; *see also* ECF No. 862-5, PageID 4499–4501.) The Officers also recovered loose rounds of 9mm ammunition and 7.62x39 ammunition, personal property, and other personal effects from Mr. Johnson's vehicle. (ECF No. 862-3, PageID 4493–95.) The vehicle was then impounded. (ECF No. 862-6, PageID 4503.)

  **B.**  **Procedural Background**

On September 11, 2020, Mr. Johnson was indicted in the Franklin County Court of Common Pleas on three charges: (1) possession of heroin in violation of Ohio Rev. Code § 2925.11; (2) possession of cocaine in violation of Ohio Rev. Code § 2925.11; and (3)

designing a vehicle with a hidden compartment used to transport controlled substances in violation of Ohio Rev. Code § 2923.241. (*State v. Johnson*, 2021 Ohio Misc. 4797 (Ohio C.P., May 4, 2021).) Mr. Johnson moved to suppress the evidence seized from the September 4, 2020 warrantless search of his vehicle. (*Id.*) After conducting an evidentiary hearing, Judge Mark Serrott of the Franklin County Court of Common Pleas granted Mr. Johnson's motion to suppress evidence. (*Id.*)

The State of Ohio appealed, and in May 2022, the Ohio Court of Appeals for the Tenth District reversed the suppression order and remanded the case for further proceedings. (*State v. Johnson*, 2022-Ohio-1733, 189 N.E.3d 381, 384 (Ohio Ct. App.)) The Tenth District found that two warrantless searches occurred, both of which were lawful. (*Id.*) First, the search of the area behind the center console access panel was a valid inventory search that provided the probable cause to believe that the vehicle contained additional contraband. (*Id.*) The later search of the area behind the gearshift or instrument panel was lawful under the automobile exception. (*Id.*) Mr. Johnson appealed to the Supreme Court of Ohio, which declined to exercise its jurisdiction over the case. (*State v. Johnson*, 2023-Ohio-554, 203 N.E.3d 741, 742.)

On April 18, 2024, a federal grand jury in this Court returned a Second Superseding Indictment charging Mr. Johnson with various narcotics and firearms offenses. (ECF No. 778.) Count Two of the Second Superseding Indictment charges Mr. Johnson with possession with intent to distribute heroin and cocaine as a result of the narcotics seized from the September 4, 2020 traffic stop at issue. (ECF No. 778, ¶ 13.) After the federal charges were brought against Mr. Johnson, the Franklin county prosecutor entered a *Nolle Prosecqui* agreeing to dismiss his case in the Franklin County Court of Common Pleas. (ECF No. 862-8, PageID 4532–33.)

On May 2, 2024, Mr. Johnson appeared before this Court and entered a plea of not guilty. (ECF No. 801.) Trial is set to begin on October 21, 2024. (ECF No. 802.) Mr. Johnson moved to suppress evidence obtained as a result of the warrantless searches conducted by the Columbus Police during the September 4, 2020 traffic stop. (Mot.)

## II. STANDARD OF REVIEW

The Fourth Amendment protects "[t]he right of people to be secure in their persons, houses, papers, and effects against unreasonable searches and seizures . . ." U.S. Const. amend. IV. An automobile is considered an "effect" and therefore searches and seizures of automobiles are subject to the constitutional standard of reasonableness. *United States v. Chadwick*, 433 U.S. 1, 12 (1977). To preserve the right to be free from unreasonable searches and seizures, warrantless searches are "*per se* unreasonable subject only to a few specifically established and well-delineated exceptions." *United States v. Trice*, 966 F.3d 506, 512 (6th Cir. 2020) (citations omitted). Here, two relevant exceptions to the warrant requirement are the inventory exception and the automobile exception. *See Colorado v. Bertine*, 479 U.S. 367, 371–72, (1987) (inventory exception); *California v. Acevedo*, 500 U.S. 565, 570 (1991) (automobile exception).

If a search or seizure is considered unreasonable, the exclusionary rule prohibits the admission of any evidence obtained through, or derivative evidence acquired as a result of, an unlawful search or seizure. *United States v. Kennedy*, 61 F.3d 494, 497 (6th Cir. 1995) (citing *Wong Sun v. United States*, 371 U.S. 471, 484–85 (1963)). Beyond protecting citizens' Fourth Amendment rights, the exclusionary rule also helps deter law enforcement from obtaining evidence by unconstitutional means. *Nix v. Williams*, 467 U.S. 431, 442–43 (1984).

A defendant may seek the exclusion of evidence by filing a pretrial motion with the court. Fed. R. Crim. P.12(b)(3)(C). Although the defendant carries the burden of showing a violation of

a constitutional or statutory right that warrants suppression, the Government bears the burden of justifying a warrantless search. *United States v. Patel*, 579 F. App'x 449, 453 (6th Cir. 2014) (explaining defendant's burden); *see also United States v. Haynes*, 301 F.3d 669, 677 (6th Cir. 2002) (describing government's burden). Even if a court finds a Fourth Amendment violation occurred, the United States Supreme Court has "rejected the argument that exclusion is a necessary consequence of a Fourth Amendment violation." *Herring v. United States*, 555 U.S. 135, 141 (2009) (citing *United States v. Leon*, 468 U.S. 897, 905–06 (1984); *Arizona v. Evans*, 514 U.S. 1, 10, 13–14 (1995); *Pennsylvania Bd. of Prob. and Parole v. Scott*, 524 U.S. 357, 363 (1998)). For exclusion to be warranted, the "benefits of deterrence must outweigh the costs." *Herring*, 555 U.S. at 141 (citations omitted) (rejecting "the argument that exclusion is a necessary consequence of a Fourth Amendment violation").

### III. ANALYSIS

Mr. Johnson moves for suppression of evidence obtained from the warrantless search of his vehicle, arguing that the Government cannot rely on the inventory, search incident to lawful arrest, or automobile exceptions to justify the warrantless search. (Mot., PageID 4287.) The Government responds that the search was valid under the inventory and automobile exceptions. (Opp., PageID 4463.) The Court analyzes each exception in turn.

#### A. Search Incident to Lawful Arrest

Mr. Johnson argues that the warrantless search of his vehicle cannot be justified under the search incident to lawful arrest exception to the warrant requirement. (Mot., PageID 4288.) Under this exception, law enforcement may "search a vehicle incident to a recent occupant's

arrest only when the arrestee is unsecured and within reaching distance of the passenger compartment at the time of the search." *Arizona v. Gant*, 556 U.S. 332, 343 (2009).

The Government does not justify the warrantless search under this exception, nor could it. Mr. Johnson was arrested for driving under a suspended license, handcuffed, and placed into the back of a police cruiser. (ECF No. 862-1, PageID 4489.) Thus, at the time of the search, Mr. Johnson was secured and not within reaching distance of the vehicle.

### B. Inventory Exception

Next, Mr. Johnson argues that the Officers had an improper investigatory motive and exceeded the scope of an inventory search. The inventory exception to the warrant requirement permits law enforcement officers to conduct inventory searches, so long as they do so pursuant to standardized procedures. *United States v. Tackett*, 486 F.3d 230, 232 (6th Cir. 2007) (citing *Bertine*, 479 U.S. at 371–72.) The purpose is "to protect an owner's property while it is in the custody of the police, to insure against claims of lost, stolen, or vandalized property, and to guard the police from danger." *United States v. Smith*, 510 F.3d 641, 650–51 (6th Cir. 2007) (quoting *United States v. Lumpkin*, 159 F.3d 983, 987 (6th Cir. 1998)). To be valid, an inventory search may not be undertaken for investigative purposes and must be conducted according to standard police procedures. *United States v. Snoddy*, 976 F.3d 630, 634 (6th Cir. 2020) (citing *Smith*, 510 F.3d at 651; and *Lumpkin*, 159 F.3d at 987). Law enforcement may not hide an investigative search under the pretext of an inventory search. *South Dakota v. Opperman*, 428 U.S. 364, 375–76 (1976); *Florida v. Wells*, 495 U.S. 1, 4 (1990) (explaining that the search must be designed to produce an inventory). But an officer's suspicion that they may find contraband does not necessarily invalidate an otherwise proper inventory search. *Lumpkin*, 159 F.3d at 987.

When conducting an inventory search, officers may exercise a reasonable degree of discretion as to how to conduct the search without violating the Fourth Amendment. *United States v. Jackson*, 682 F.3d 448, 455 (6th Cir. 2012) (citing *Smith*, 510 F.3d at 650). Officers are given "sufficient latitude to determine whether a particular container should or should not be opened in light of the nature of the search and characteristics of the container itself." *Wells*, 495 U.S. at 4. For example, in *Jackson*, the Sixth Circuit held that an officer's decision to lift and search underneath a vehicle's tampered with and loose floor carpeting was constitutional. *Jackson*, 682 F.3d at 456 (affirming district court's judgment denying the suppression of a firearm found under the carpet). An officer when conducting an inventory search "may search those places within an automobile where, under the facts of the particular case, [the officer] can reasonably conclude that personal property may be located." *Id.* Officers, however, regardless of their standardized policies, do not have "carte blanche" when conducting an inventory search. *Id.* at 455 (citing *Tackett*, 486 F.3d at 232) (emphasizing that the search must be tailored to produce an inventory).

Mr. Johnson does not contest that the Officers had a valid basis to impound his vehicle because he was driving under a suspended license. (Mot., PageID 4290–91; citing Columbus Codified Ordinance § 2107.01.) But Mr. Johnson argues that the search was an investigatory search impermissibly disguised as an inventory search and that the Officers exceeded the permissible scope of the inventory search. (*Id.* at PageID 4292–94.) The Court addresses each argument in turn.

### i. The inventory search was not pretextual.

Mr. Johnson makes two arguments to support his assertion that the inventory search was a pretext for an investigative search. (Mot., PageID 4293–95.) First, he argues that the Officers'

failure to list any of the personal property besides the narcotics and ammunition found in Mr. Johnson's vehicle demonstrates the inventory search was an excuse to search the vehicle for investigatory purposes, not to ensure that Mr. Johnson's items were properly documented. (*Id.*) Second, Mr. Johnson argues that Officer Franklin's comments enthusiastically exclaiming that he found the narcotics within the access panel also reveal Officer Franklin's investigatory motive for conducting the inventory search. (*Id.*)

To support his arguments, Mr. Johnson cites *United States v. Torbert*, 207 F. Supp. 3d 808 (S.D. Ohio 2016) (Black, J.). (*Id.*) There, this Court concluded that not only was the inventory search pretext for an investigative search, but the officers also exceeded the permissible scope of the search. *Id.* at 823. First, the Court concluded that the defendant's window tint violation did not authorize the impoundment of the defendant's vehicle. *Id.* at 821. Second, the Court explained that the officers admitted that the decision to impound the vehicle "was merely a pretext designed to provide an allegedly 'legal reason' for the officers to search the vehicle under the guise of an inventory search." *Id.* at 823.

Next, the Court found that the officers exceeded the permissible scope of an inventory search because they failed to list "one single item of personal property on the impound report other than the contraband." *Id.* This fact, coupled with the officer's extensive search of the front of the driver seat, showed that the search conducted was "an exhaustive attempt to locate hidden contraband and not a good faith attempt to protect personal property." *Id.* Lastly, the Court explained that the removal of an interior panel was distinguishable from cases in which courts found permissible inventory searches like in *Jackson*, 682 F.3d at 448, where the officers looked under torn carpeting, and *Lumpkin*, 159 F.3d 983 (6th Cir. 1998), where officers searched in the engine compartment. *Id.* at 824.

In some ways, this case is like *Torbert*. Here, like in *Torbert*, the inventory lists only contraband items. *See Torbert*, 207 Supp. 3d at 823 (describing how the officers "failed entirely to list one single item of personal property on the impound report other than the contraband.") While the Government argues that personal property was included on the inventory form, the only personal property listed besides the narcotics seized was loose ammunition. (ECF No. 862, PageID 4471; *see also* ECF No. 862-1, PageID 4487–88.) This fact favors Mr. Johnson's argument that the Officers had an investigatory motive while conducting the inventory search.

Their similarities, however, end there. Mr. Johnson argues Officer Franklin's exclamations when he discovered the contraband were analogous to the officer in *Torbert* who exclaimed "[h]ere it is, right here" upon finding contraband. (Mot., PageID 4292.) While Officer Franklin did state that he enjoys looking for unique places to hide contraband in a vehicle, his remarks that he "finally" found contraband in one of the "good hiding places" suggests surprise, not anticipation. (*See* Franklin Body Cam., 7:58–8:05; 8:25–8:35; 9:05–9:15.) Officer Franklin's surprise at finding contraband is an important distinction from *Torbert*, where the officer searched exhaustively for something he knew he would find. Officer Franklin was a new police officer, who was excited to find narcotics during what is normally a routine automobile inventory. (ECF No. 873.)

Even if the Officers were suspicious that Mr. Johnson's vehicle contained contraband, such a suspicion does not invalidate an otherwise proper search. *See Lumpkin*, 159 F.3d at 987 (holding a suspicion of contraband or some investigatory motive, does not invalidate an inventory search). Mere suspicion, without more, does not transform an inventory search into an investigatory search. In *Torbert*, the express admission from the officers that they used the inventory search as a "legal reason" to search for contraband allowed this Court to conclude that

11

the inventory search was pretextual. *Torbert*, 207 Supp. 3d at 823 (explaining that the officers readily admitted that their search was conducted to locate contraband). Here, no such admissions occurred. Accordingly, the Court finds that the inventory search was not pretext for an investigative search.

### ii. The inventory search did not exceed its permissible scope.

Mr. Johnson's remaining arguments mainly object to the scope of the search. Mr. Johnson argues that the Officer Franklin's removal of the access panel "crossed the threshold from an inventory to an investigation." (Mot., PageID 4292.) But standard procedure of the Columbus Police is to "[c]onduct an inventory of the contents of all reasonably accessible areas and containers in the vehicle." (*See* ECF No. 873, Exhibit I, Section II(A).) Although the policy does not define "reasonably accessible areas," Officer Franklin testified that the access panel appeared frequently accessed because the grime covering most of the access panel was worn away in a particular place where it latched. (ECF No. 873.) Further, the access panel was not flush with the rest of automobile's interior paneling, which suggested it was placed back on hastily. (*Id.*) Thus, although Officer Franklin does not normally search behind access panels as part of an inventory search, he did so here because it appeared frequently accessed and manipulated to be used as a storage area. (ECF No. 873.)

Once again, these facts distinguish this case from *Torbert*. There, the officers' pulled on the panel to remove it, potentially damaging the vehicle," while here, Officer Franklin "simply touched the panel and it fell off." (*Id.* at PageID 4471; *see also* ECF No. 873.) In *Torbert*, the panel in the passenger leg area was loose "undoubtedly [from] be[ing] kicked or bumped over time" and thus was "more likely to be an indication of vehicular damage than a compartment for storing personal property." *Torbert*, 207 Supp. 3d at 824.

12

When conducting an inventory search, officers are given "sufficient latitude to determine whether a particular container should or should not be opened in light of the nature of the search and characteristics of the container itself." *Wells*, 495 U.S. at 4. Although the policy does not define "reasonably accessible areas" subject to an inventory search, because the access panel appeared to be something often opened, it was congruent with the standard impoundment procedures to explore the contents of such a storage area.

Accordingly, although a close call, the Court finds that Officer Franklin's decision to open the access panel was within the permissible scope of an inventory search. The inventory search of Mr. Johnson's lawfully impounded vehicle was conducted consistent with Mr. Johnson's Fourth Amendment rights and in accordance with the CDP policy. Given that the search behind the access panel was lawful, the Court need not address the Government's arguments that the search was permissible under the good-faith exception to the Fourth Amendment warrant requirement.

   **C.**  **Automobile Exception**

The Government argues that, once the Officers discovered narcotics during the inventory search, the Officers then had probable cause to search the rest of the vehicle for additional contraband. (Opp., PageID 4472–74.) Because the Officers had probable cause to search the rest of the vehicle, the search behind the instrument panel was also permissible under the automobile exception to the warrant requirement. (*Id.*)

The automobile exception allows law enforcement to conduct a warrantless search of a vehicle if they have "probable cause to believe that the vehicle contains evidence of a crime. *United States v. Wilson*, No. 22-1587, 2023 U.S. App. LEXIS 14471, at *5 (6th Cir. June 8, 2023) (citing *Smith*, 510 F.3d at 647). "Probable cause requires only 'reasonable grounds for

13

belief, supported by less than *prima facie* proof but more than mere suspicion.'" *Id.* (citing *Smith v. Thornburg*, 136 F.3d 1070, 1074 (6th Cir. 1998)). "The court's determination of whether probable cause existed at the time of the search is a 'commonsense, practical question' to be judged from the 'totality-of-the-circumstances.'" *Smith*, 510 F.3d at 647 (quoting *Thornburg*, 136 F.3d at 1074–75). The automobile exception also affords law enforcement the right to search compartments and containers within a vehicle when officers have probable cause to believe that contraband is contained within the containers. *Acevedo*, 500 U.S. at 580 (recognizing *United States v. Ross*, 456 U.S. 798, 800 (1982)).

The discovery of narcotics can serve as probable cause to search for more narcotics. For example, when a defendant is searched incident to his lawful arrest and the officers discover contraband, that contraband allows law enforcement to search a defendant's vehicle under the automobile exception. *See United States v. Harris*, 578 F. Supp. 3d 930, 935–36 (E.D. Mich. 2022) (holding the officers had probable cause to search the defendant's car because of cocaine found during a search incident to arrest); *United States v. Guy*, 1 F. App'x 410, 413 (6th Cir. 2001) (finding that a crackpipe in the defendant's hands gave the officers probable cause believe that other contraband would be found in his car). And the Sixth Circuit has held that contraband in one portion of a vehicle enables a warrantless search of the entire vehicle under the automobile exception. *See United States v. Witherspoon*, No. 21-4167, 2022 U.S. App. LEXIS 31446, at *8 (6th Cir. Nov. 14, 2022) (validating a warrantless search of a vehicle's door panel based on probable cause where officers first saw a gun and narcotics inside a door panel).

Here, the initial discovery of narcotics behind the center console access panel provided the Officers with probable cause to believe that the vehicle contained additional contraband. After discovering black tar heroin behind the access panel, Officer Franklin observed additional

bags of narcotics filled back deep into the center console toward the gear shift. (ECF No. 862-1, PageID 4489–90.) At that time, the Officers had probable cause and the search shifted from an inventory to an investigatory search. Officer Randall then pulled on the panel in front of the center console gear shifter and found that it easily opened. (*Id.*) As he opened the panel, he found two small baggies containing a white rock like substance later found to be crack cocaine. (*Id.*)

Because the Officers possessed the requisite probable cause, the later search behind the instrument panel was constitutional under the automobile exception. Thus, both the initial search of the access panel in the bottom portion of the center console and the search of the instrument panel were conducted consistent with Mr. Johnson's Fourth Amendment rights. Since both searches were conducted lawfully, and law enforcement did not violate Mr. Johnson's constitutional rights, excluding evidence obtained during those searches is unnecessary.

## IV. CONCLUSION

Because the Court finds that Mr. Johnson's Fourth Amendment rights were not violated, Mr. Johnson's Motion to Suppress is **DENIED**. (ECF No. 847.)

    **IT IS SO ORDERED.**

| | |
|---|---|
| **8/1/2024** | **s/Edmund A. Sargus, Jr.** |
| **DATE** | **EDMUND A. SARGUS, JR.** |
| | **UNITED STATES DISTRICT JUDGE** |