# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF OHIO
# EASTERN DIVISION

**UNITED STATES OF AMERICA,**

      **Plaintiff,**

v.

      **Case No. 2:22-cr-117(5)**
      **JUDGE EDMUND A. SARGUS, JR.**

**TAVARYYUAN JOHNSON,**

      **Defendant.**

## OPINION AND ORDER

This matter is before the Court on Defendant Tavaryyuan Johnson's Renewed Motion for Judgment of Acquittal and Motion for a New Trial. (ECF No. 1148.) The Government responded (ECF No. 1192), and Mr. Johnson replied (ECF No. 1197). For the reason below, the Motions are **DENIED**. (ECF No. 1148.)

## BACKGROUND

In June 2022, Mr. Johnson was arrested on a complaint charging him with drug offenses. (ECF No. 1.) The next day, a federal grand jury returned an Indictment against Mr. Johnson and others, charging him and them with drug offenses. (ECF No. 23.) In October 2022, the grand jury returned a Superseding Indictment against Mr. Johnson and 22 others, charging him and them with drug distribution, drug trafficking conspiracy, and firearms offenses. (ECF No. 148.)

After the Superseding Indictment, many of Mr. Johnson's co-defendants signed plea agreements. In April 2024, the grand jury returned a Second Superseding Indictment against Mr. Johnson with additional but similar crimes as in the Superseding Indictment. (ECF No. 778.) On December 11, 2024, the grand jury returned its Third (and final) Superseding Indictment against Mr. Johnson, which contained the same charges against him as alleged in the Second

Superseding Indictment. (ECF No. 995.) Mr. Johnson pled not guilty to every count in all four of the Indictments. (ECF Nos. 63, 283, 801, 1000.)

Mr. Johnson went to trial with another co-defendant, David Price, on January 13, 2025. (ECF No. 1058.) The Government rested its case-in-chief on January 31, 2025, and both Mr. Johnson and Mr. Price unsuccessfully moved for judgments of acquittal under Federal Rule of Criminal Procedure 29. (ECF No. 1112.) On February 5, 2025, after a day and a half of deliberations, the jury returned a mixed verdict as follows for Mr. Johnson:

> Count 1: Guilty as to Conspiracy to Distribute and Possess with Intent to Distribute Fentanyl, Cocaine, Cocaine Base, Methamphetamine, Heroin, Marijuana, Alprazolam, or Oxycodone;
>
>> When asked what amount of a mixture or substance containing a detectable amount of fentanyl do you find Mr. Johnson conspired to possess with intent to distribute, the jury marked "None" on the Special Jury Finding (Count 1). When asked the same question as to cocaine on the same Special Finding, the jury marked "Some detectable amount or more but less than 500 grams." When asked the same question as to cocaine base, the jury marked "28 grams or more but less than 280 grams." And when asked the same question as to heroin, the jury marked "100 grams or more." (ECF No. 1124, PageID 6400.)
>
> Count 2: Guilty as to Possession with Intent to Distribute Heroin or Cocaine;
>
> Count 8: Guilty as to Possession with Intent to Distribute Cocaine Base[1];
>
> Count 9: Not guilty as to Possession of a Firearm in Furtherance of Drug Trafficking Crime;
>
> Count 11: Guilty as to Possession with Intent to Distribute Fentanyl or Cocaine;
>
>> When asked on Special Jury Finding (Count 11) what amount of a mixture or substance containing a detectable amount of fentanyl do you find that Mr. Johnson possessed with intent to distribute, the jury marked "None."
>
> Count 12: Not guilty as to Possession of a Firearm in Furtherance of Drug Trafficking; and

---

[1] There were special jury findings on Counts 2 and 8, but they are not relevant for purposes of deciding these Motions and are omitted. (ECF No. 1124, PageID 6403, PageID 6405.)

2

>    Count 13: Not guilty as to Possession of a Firearm in Furtherance of Drug Trafficking.

(ECF No. 1124, PageID 6399–6410.)

Mr. Johnson filed the instant Motions on February 19, 2025 (Mot., ECF No. 1148), and it was ripe at the end of March 2025.

As a preliminary matter, the Court notes that the parties did not order and do not cite to the jury trials transcripts in their briefs. It is not the Court's burden to sift through the record and provide such citations. S.D. Ohio Civ. R. 7.2 (rule on citations in motions and other papers filed with the Court); S.D. Ohio Crim. R. 1.2 (applying local civil rules to criminal actions). The Undersigned presided over the entire nearly four-week trial and relies on his recollection of the proceedings supported by prior opinions and orders, the parties' representation of the facts in their briefs, the trial minute entries, and other documents on the record to decide these Motions.

## MOTION FOR JUDGMENT OF ACQUITTAL

"A defendant may move for a judgment of acquittal, or renew such a motion, within 14 days after a guilty verdict" and a court "must enter a judgment of acquittal of any offense for which the evidence is insufficient to sustain a conviction." Fed. R. Crim. P. 29(a), (c). In assessing a defendant's challenge to the sufficiency of the evidence under Rule 29, the Court must determine "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979) (emphasis in original). "Reversal of a conviction is warranted 'only if, viewing the record as a whole, the judgment is not supported by substantial and competent evidence.'" *United States v. Smith*, 749

F.3d 465, 477 (6th Cir. 2014) (quoting *United States v. Blakeney*, 942 F.2d 1001, 1010 (6th Cir. 1991)).

In considering a Rule 29 motion, a court must not "weigh the evidence, assess the credibility of witnesses, or substitute its judgment for that of the jury." *United States v. Wright*, 16 F.3d 1429, 1440 (6th Cir. 1994), *cert. denied*, 512 U.S. 1243 (1994). The defendant "bears a very heavy burden" of making his showing. *United States v. Ross*, 502 F.3d 521, 529 (6th Cir. 2007) (citing *United States v. Davis*, 397 F.3d 340, 344 (6th Cir. 2005)); *see also United States v. Wheat*, 988 F.3d 299, 306 (6th Cir. 2021) (describing the burden as "demanding").

Mr. Johnson challenges the sufficiency of the evidence on Count 1 and Count 11. The Court examines chronologically the Counts and evidence supporting them.

## I. Count 1

Mr. Johnson urges that the evidence presented at trial was insufficient to show that he knowingly and voluntarily joined the conspiracy in Count 1. (Mot. PageID 6534.) Final Jury Instruction Number 20 lists the elements of Count 1:

> *First*: That two or more persons conspired, or agreed, to distribute and possess with intent to distribute fentanyl, cocaine, cocaine base, methamphetamine, heroin, marijuana, alprazolam, or oxycodone.
>
> *Second*: That each defendant knowingly and voluntarily joined the conspiracy.
>
> *Third*: That each defendant joined the conspiracy with the intent that at least one of conspirators engage in conduct that satisfies the elements of distribution and possession with intent to distribute fentanyl, cocaine, cocaine base, methamphetamine, heroin, marijuana, alprazolam, or oxycodone.

(Final Jury Instructions, ECF No. 1115, PageID 6174–75.) Although Mr. Johnson attacks the second element, he does not challenge the first and third elements.

Mr. Johnson argues that the Government's case focused on his personal drug dealing activities and failed to explain "how, when, or why Mr. Johnson became affiliated with the

4

conspiracy." (Mot. PageID 6535.) The Government attempted to cure these weaknesses in its case, says Mr. Johnson, by focusing on his familial relationship with Mr. Johnson's uncle, Cordell Washington—one of the undisputed co-leaders of the drug trafficking organization ("DTO"). (*Id.* PageID 6536.) "[A]ssociations, on their own, are not enough to establish a person's connection to a conspiracy," yet that is what the Government encouraged the jury to do, according the Mr. Johnson. (*Id.* (citing *United States v. Davenport*, 808 F.2d 1212, 1218 (6th Cir. 1987)).)

The Government counters, reiterating first that Mr. Johnson "bears a very heavy burden" on his Rule 29 Motion. (ECF No. 1192, PageID 7067 (citing *Ross*, 502 F.3d at 529).) The Government explains that at trial, it called approximately 45 witnesses to testify, including Columbus Police Detective Brandon Harmon, Drug Enforcement Administration Task Force Officer Peter Vanderbilt, and co-defendants Robert Humphrey, Alexis Lewis, Patrick Saultz, Allison Smith, and Brittney Williams. (*Id.* PageID 7068–69.) These witnesses provided information specific to Mr. Johnson and his role in the DTO. (*Id.*)

The Court agrees with the Government that Mr. Johnson cannot sustain his substantial Rule 29 burden. At trial, the Government offered evidence that from around 2008 until 2022, Saultz and Washington led a large and complex DTO responsible for trafficking various controlled substances including fentanyl, cocaine, crack cocaine, heroin, methamphetamine, marijuana, oxycodone, and alprazolam, to individuals in Ohio and West Virginia. (ECF Nos. 1058, 1059, 1067, 1069, 1074, 1081, 1084, 1086, 1087, 1097, 1101, 1103, 1106, 1112, 1113, 1119, 1121, collectively, "Jury Trial Minutes"; Mot. PageID 6533.) Law enforcement determined that the DTO involved many members, including Mr. Johnson. (Jury Trial Minutes.) The Government presented evidence that Mr. Johnson resided at 430 A. South Warren in

Columbus, Ohio during the investigation and while there, sold drugs that Mr. Washington provided to him. (*Id.*; ECF No. 1192, PageID 7070.)

A tip to a task force about Mr. Johnson resulted in a traffic stop on September 4, 2020, during which Mr. Johnson was arrested for driving under suspension. (Jury Trial Minutes; ECF No. 1192, PageID 7070; *see* Opinion and Order on Motion to Suppress Traffic Stop Evidence, ECF No. 886.) A Columbus Division of Police ("CPD") search of Mr. Johnson's vehicle and person recovered $3,156.38, as well as 273.3 grams of heroin and 312.2 grams of cocaine in the console of Mr. Johnson's vehicle. (ECF No. 1192, PageID 7070; *see* Opinion and Order on Motion to Suppress Traffic Stop Evidence, ECF No. 886.) Mr. Johnson was on the phone with Mr. Washington at the time he was stopped, and Mr. Washington showed up at the scene during the stop. (ECF No. 1192, PageID 7070; *see* Opinion and Order on Motion to Suppress Traffic Stop Evidence, ECF No. 886.)

At trial, witness Humphrey testified that Mr. Johnson was known as "Gucci" and that he sold drugs for Mr. Washington out of 430 A. South Warren. (Jury Trial Minutes; ECF No. 1192, PageID 7070–71.) Humphrey testified that Mr. Johnson was Mr. Washington's nephew, and Mr. Johnson had been selling drugs for Mr. Washington since 2014. (Jury Trial Minutes; ECF No. 1192, PageID 7070–71.) Humphrey said that he had driven people to Mr. Johnson's house to buy drugs. (Jury Trial Minutes; ECF No. 1192, PageID 7070–71.) He also testified that while he was incarcerated, he had a conversation with Mr. Washington in which Mr. Washington told Humphrey that if he testified against Mr. Johnson, Mr. Washington would have him killed. (Jury Trial Minutes; ECF No. 1192, PageID 7071.)

While Mr. Johnson resided on the top portion of 430 A. South Warren, a co-defendant, Tyler Bourdo, sold drugs out of the bottom portion, 430 B. (Jury Trial Minutes; ECF No. 1192,

PageID 7070–71.) Witness Smith testified that DTO members sold drugs in "packs" that generally contained various drugs provided by Mr. Washington and Mr. Saultz, and Mr. Johnson's packs were usually larger. (Jury Trial Minutes; ECF No. 1192, PageID 7070–71.) Witnesses Humphrey and Smith both testified that they had purchased drugs from Mr. Johnson, both from 430 A. South Warren and a previous address where Mr. Johnson sold drugs. (Jury Trial Minutes; ECF No. 1192, PageID 7070–71.)

The Government offered evidence in the form of intercepted wire and electronic communications from telephone lines used by Mr. Washington, as authorized by court order. On at least one call admitted into evidence, Mr. Johnson asked Mr. Saultz, the other leader of the DTO, for advice about a drug test he had to take. (Jury Trial Minutes; ECF No. 1192, PageID 7072.) Mr. Saultz advised Mr. Johnson to stop touching the drugs or else he would have a positive test. (Jury Trial Minutes; ECF No. 1192, PageID 7072.)

A federal search warrant was executed on 430 A. South Warren on June 29, 2022. (Jury Trial Minutes; ECF No. 1192, PageID 7073; *see* Opinion and Order on Motion to Suppress Evidence from Search Warrants, ECF No. 885.) Mr. Johnson was present during the search and arrested pursuant to a federal arrest warrant. (Jury Trial Minutes; ECF No. 1192, PageID 7073.) CPD recovered cutting agents, scales, cell phones, lottery tickets, money bands, $44,060, narcotics that tested positive for 53.586 grams of cocaine base, and a firearm. (Jury Trial Minutes; ECF No. 1192, PageID 7073.)

There was also testimony from more than one witness connecting Mr. Johnson to 1214 Smith Road, Columbus, Ohio, which was owned by Priscilla Washington, who was Mr. Washington's mother and Mr. Johnson's grandmother. (Jury Trial Minutes; ECF No. 1192, PageID 7073–74; Mot. PageID 6533.) Witness Williams testified that she was instructed by Mr.

Washington to take bags to and from Smith Road on behalf of Mr. Washington and Mr. Johnson, and Williams was instructed not to look in the bags. (Jury Trial Minutes; ECF No. 1192, PageID 7073–74; Mot. PageID 6533.) Testimony established that when a search warrant was executed at Smith Road, officers recovered from a safe $101,410 and bulk drugs that tested positive for 266.978 grams of fentanyl and 244.744 grams of cocaine after crime lab testing. (Jury Trial Minutes; ECF No. 1192, PageID 7073–74; Mot. PageID 6533.) The jury observed photographs of the drugs and money recovered from the safe. (Jury Trial Minutes; ECF No. 1192, PageID 7073–74; Mot. PageID 6533.)

There was testimony about forensic extractions on four media devices that belonged to Mr. Johnson and were seized from the September 4, 2020 (traffic stop) and June 29, 2022 (430 A. South Warren) searches. (Jury Trial Minutes; ECF No. 1192, PageID 7074.) Portions of the extractions were published to the jury through Detective Vanderbilt, including text messages about fentanyl, crack cocaine, heroin, and cocaine and that linked Mr. Johnson to other members of the DTO. (Jury Trial Minutes; ECF No. 1192, PageID 7074.)

Viewing this evidence collectively, a rational trier of fact could have found it was enough to prove beyond a reasonable doubt that Mr. Johnson knowingly and voluntarily joined Mr. Washington and Mr. Saultz's DTO, the conspiracy here. As instructed in Final Jury Instruction Number 6, the jury could consider both direct evidence (evidence like the testimony of an eyewitness) and circumstantial evidence (a chain of circumstances that indirectly proves a fact). (*See* Final Jury Instructions, PageID 6158.) The evidence showed Mr. Johnson sold drugs from his residence at 430 A. South Warren that came from the DTO, and a search warrant execution revealed that drugs, items used to sell drugs, and a firearm were present at the residence. Drugs and currency were found in his car during a traffic stop, and Mr. Johnson called Mr. Washington

and Mr. Washington arrived during the stop. Witnesses Humphrey and Smith testified that Mr. Washington provided Mr. Johnson with drugs to sell. Phone calls and text messages connected Mr. Johnson to, and demonstrated his participation in, the DTO. Mr. Johnson's involvement with the Washington/Saultz DTO was much more than mere familial association. There were many different paths by which a juror could have logically concluded that Mr. Johnson was part of the conspiracy.

*United States v. Pearce*, relied on by Mr. Johnson, does not change the Court's conclusion. (Mot. PageID 6537 (citing 912 F.2d 159 (6th Cir. 1990), *opinion clarified sub nom. United States v. Thorpe*, 947 F.2d 946 (6th Cir. 1991)).) As Mr. Johnson concedes, "this case is much more complex and expansive than the single-home raid" in *Pearce*. (*Id.*) There, when police searched a house after an informant said he or she had purchased crack from that house, they found Defendant Pearce sitting on a couch in the dining room next to a bag that contained registered bills that the informant had earlier used to purchase crack and a bag with crack. *Pearce*, 912 F.2d at 160–61. The police also found Defendant Thorpe near an open floor drain that contained two doses of crack. *Id*. Nearby to Thorpe, they found guns and associated rounds in his pocket. *Id.* Defendants Pearce and Thorpe were found guilty on all indicted charges after separate jury trials. *Id.* Pearce appealed his conspiracy to maintain a place to distribute cocaine base (21 U.S.C. § 846) and possession with intent to distribute crack (21 U.S.C. § 841(a)(1)) convictions. *Id.* at 160. Thorpe appealed his conspiracy (§ 846) and other convictions. *Id.*

The Sixth Circuit reversed on the drug conspiracy convictions, finding the record contained no evidence that Defendants Pearce and Thorpe had formed an agreement. *Id.* at 162. Other than the fact that both Thorpe and Pearce were in the house at the time of the police raid,

9

the government had introduced no evidence of a connection between Pearce, Thorpe, or any third party to maintain a crack house or distribute crack. *Id.*

The evidence recounted above demonstrates Mr. Johnson was much more than merely present. He was connected with at least two residences connected to the DTO; multiple witnesses testified he sold drugs for the DTO; his electronic devices contained messages about dealing drugs within the DTO; and he was on recorded phone calls with members of the DTO. The facts here, simply put, are not the facts in *Pearce*.

Mr. Johnson's Rule 29 Motion is denied as to his Count 1 conviction because a rational trier of fact could have found element two of the conspiracy count beyond a reasonable doubt. *See Jackson*, 443 U.S. 307.

## II. Count 11

As to Count 11, Mr. Johnson contends that the evidence offered at trial was inadequate to show he possessed cocaine. (Mot. PageID 6538.) Final Jury Instruction Number 20 lists the elements of Count 11, which the Government had to prove beyond a reasonable doubt:

<u>First</u>: The defendant knowingly or intentionally possessed fentanyl or cocaine.

<u>Second</u>: The defendant intended to distribute fentanyl or cocaine.

(Final Jury Instructions, PageID 6211.)

Mr. Johnson argues that he did not frequent 1214 Smith Road (his grandmother Priscilla Washington's house), where the search team recovered the fentanyl and cocaine associated with Count 11, and there was a lack of evidence that he possessed anything at Smith Road. (Mot. PageID 6538.) He says it was Mr. Washington and Priscilla who had strong connections to the Smith Road residence—not him. (*Id.*)

Mr. Johnson argues it is unsurprising that the jury did not find him responsible for the fentanyl at 1214 Smith Road, and "[f]or the same reasons that the jury found Mr. Johnson not responsible for the fentanyl in the home, Mr. Johnson is not responsible for the cocaine quantity." (*Id.* PageID 6538–39.) Mr. Johnson asserts that the jury mistakenly found Mr. Johnson guilty of Count 11 because there was not special verdict form for the cocaine quantity (but there was for fentanyl). (*Id.* PageID 6539.) Or, Mr. Johnson argues, there was an inconsistent verdict because the fentanyl and cocaine were found in the "same segregated area of the house," a safe, and the jury found that the Government failed to prove that Mr. Johnson possessed fentanyl and firearms but attributed the cocaine to him. (*Id.*)

On the surface, Mr. Johnson's arguments might have appeal. But the Court's analysis is guided by the standard that instructs reversal of a conviction is warranted only if, viewing the record as a whole, "the judgment is not supported by substantial and competent evidence." *See Smith*, 749 F.3d at 477. And a rational trier of fact could have found the essential elements of Count 11 were satisfied.

The Court first addresses Mr. Johnson's argument that there was insufficient evidence to support a finding that he possessed anything at Smith Road. While possession can be actual or constructive, the Government had to present evidence that Mr. Johnson possessed the drugs beyond a reasonable doubt. *See United States v. Sadler*, 24 F.4th 515, 550 (6th Cir. 2022) (citations omitted). A person has constructive possession if he or she has "the power and the intention at a given time to exercise dominion and control over [that] object, either directly or through others." *United States v. Craven*, 478 F.2d 1329, 1333 (6th Cir. 1973); *United States v. Grubbs*, 506 F.3d 434, 439 (6th Cir. 2007) (citing *Craven*).

11

As the Government responds, it offered evidence during trial that Mr. Johnson had consistent access to Smith Road, including a key. (Jury Trial Minutes; PageID 1192, PageID 7078.) He kept a safe in the basement at Smith Road, which contained personal documents, bulk amounts of drugs (including cocaine) packaged in bags, and cash. (Jury Trial Minutes; PageID 1192, PageID 7078.) A rational trier of fact could have found that key and safe indicated Mr. Johnson had the power and intention to exercise dominion and control over the property at Smith Road. *See Craven*, 478 F.2d at 1333. 1214 There was testimony that surveillance saw Mr. Johnson at Smith Road on at least one occasion. (*See* ECF No. 1192, PageID 7073.) A reasonable juror could infer that Mr. Johnson could come and go as he pleased from his grandmother's house.

Turning to Mr. Johnson's argument that the jury Verdict Forms were inconsistent; the relevant Verdict Form text is instructive. It reads: "With respect to Count 11 charging the defendant, **TAVARYYUAN JOHNSON**, with Possession with Intent to Distribute Fentanyl *or* Cocaine, . . . ." (ECF No. 1124, PageID 6407) (emphasis added). The "or" is important because the jury did not need to find that Mr. Johnson knowingly or intentionally possessed both drugs with an intention to distribute both drugs, but only one. That is what the jury did here when they found that Mr. Johnson did not possess fentanyl with an intent to distribute it on the special jury finding form. (*Id.* PageID 6408.)

Nor does it logically follow that because the jury acquitted Mr. Johnson as to the 18 U.S.C. § 924(c) charges, they meant to acquit him of Count 11 or that their verdict was inconsistent. (ECF No. 1192, PageID 7079.) The § 924(c) charges carry an additional element that the gun(s) were possessed in furtherance of the drug trafficking crime; that element was not

12

part of possession with intent to distribute controlled substances. (*See* Final Jury Instructions, PageID 6211, 6216–18, 6220–22.)

Finally, even if the verdict was logically inconsistent, the Supreme Court "has repeatedly held that a jury may announce logically inconsistent verdicts in a criminal case" and that "inconsistent verdicts may result from compromise, mercy, or any number of reasons." *United States v. Clemmer*, 918 F.2d 570, 573 (6th Cir. 1990) (citing *Dunn v. United States,* 284 U.S. 390, 52 S.Ct. 189, 76 L.Ed. 356 (1932).) The *Clemmer* Court elaborated that "this policy prevents judges from looking into the motivations behind jury verdicts." *Id.* (citing *United States v. Powell*, 469 U.S. 57 (1984)); *United States v. Robinson*, 99 F.4th 344, 357 n.4 (6th Cir. 2024) (citing *Clemmer*).

Mr. Johnson's Rule 29 Motion is denied as to his Count 11 conviction.

## MOTION FOR A NEW TRIAL

In the alternative to a judgment of acquittal under Rule 29, Mr. Johnson asks that the Court order a new trial under Rule 33 of the Federal Rules of Criminal Procedure. (Mot., PageID 6529.) When a defendant moves under Rule 33(a), "the court may vacate any judgment and grant a new trial if the interest of justice so requires." Fed. R. Crim. P. 33(a). Rule 33 motions are granted only if the verdict is against "the manifest weight of the evidence." *United States v. Mallory*, 902 F.3d 584, 596 (6th Cir. 2018). "Unlike on a Rule 29 motion, which requires that the court view the evidence in the light most favorable to the government, in assessing the manifest weight of the evidence for Rule 33 purposes, 'the trial judge . . . take[s] on the role of a thirteenth juror, weighing evidence and making credibility determinations firsthand to ensure there is not a miscarriage of justice.'" *United States v. Carter*, No. 1:20-cr-62, 2022 U.S. Dist. LEXIS 127464, at *5 (S.D. Ohio July 18, 2022) (Cole, J.) (quoting *Mallory*, 902 F.3d at 596). "Generally, such

13

motions are granted only 'in the extraordinary circumstance where the evidence preponderates heavily against the verdict.'" *United States v. Hughes*, 505 F.3d 578, 593 (6th Cir. 2007) (internal quotation omitted), *aff'd*, 633 F.2d 219 (6th Cir. 1980)).

Mr. Johnson makes similar arguments for a new trial, as he made on his Rule 29 Motion, including that the Government's evidence that Mr. Johnson joined the conspiracy was weak and the Government asked the jury to "blindly assume" a connection to the conspiracy due to Mr. Johnson's familial relationship to Mr. Washington. (Mot. PageID 6540.) He attempts to isolate each witnesses and his or her testimony, arguing that testimony supported the conclusion Mr. Johnson was not part of the conspiracy and simply a drug dealer working alone. (*Id.* PageID 6540–41.) He questions the reliability and the validity of those witnesses' testimony, pointing out they were addicted to drugs during the relevant time periods. (*Id.* PageID 6541.) These arguments fail for the same reasons as articulated above in section I, but with a different vantage point. If the Court takes the role of a thirteenth juror, it finds the verdict on Count 1 was not against the manifest weight of the evidence; there was more than sufficient direct and circumstantial evidence to find that Mr. Johnson knowingly and voluntarily joined the Washington/Saultz conspiracy.

The Court's holding is similar on Count 11. Mr. Johnson's arguments are the same as in section II above, and the Court rejects them for the same reasons as above while wearing its "thirteenth juror" glasses.

Finally, the Court is not persuaded that the interests of justice require a new trial. Mr. Johnson was represented by extremely competent legal counsel at trial, who thoroughly cross-examined the witnesses put forth by the Government. Mr. Johnson has not met his burden to show the Court failed to provide him with a fair trial, and his motion for a new trial is **DENIED.**

## CONCLUSION

The Court **DENIES** Defendant Tavaryyuan Johnson's Renewed Motion for Judgment of Acquittal and Motion for New Trial. (ECF No. 1148.) The Court will proceed with sentencing as scheduled.

**IT IS SO ORDERED**.


**8/25/2025**                                       **s/Edmund A. Sargus, Jr.**
**DATE**                                             **EDMUND A. SARGUS, JR.**
                                                     **UNITED STATES DISTRICT JUDGE**